UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JINJA "KYNG" PARIAH,[1]

                Plaintiff,

-against-

RAYMONE "BENZINO" SCOTT; "COI LERAY" COLLINS; HOT 97; PETER ROSENBERG: KATORA "YOUNG MA" MERRERO,

                Defendants.

1:23-CV-0231 (LTS)

ORDER TO AMEND

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff, who is currently held in the Rose M. Singer Center ("RMSC") on Rikers Island, filed this *pro se* action asserting that the defendants have violated her federal constitutional rights as well as falsified something unspecified, robbed her, and perjured themselves. (ECF 1, at 2.) She sues: (1) Raymone "Benzino" Scott, whom she describes as a "rapper/actor"; (2) "Coi Leray" Collins, whom she also describes as a "rapper/actor"; (3) "Hot 97," which the Court understands to be a privately owned radio station located in New York, New York; (4) Peter Rosenberg; and (5) Katora "Young Ma" Merrero. (*Id.* at 1, 3.) Plaintiff seeks $100 million dollars in damages "for defamation, intentional tort, perjury, extortion[,] [and] the rights to . . . their cat[a]logs [and/or] prosecution for conspiring to get [Plaintiff's] life taken . . . over some rap beef with 'Young Ma.'" (*Id.* at 5.)

---

[1] The Court understands Plaintiff to be also known as Jinja Johnson.

By order dated March 2, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[2] For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within 30 days of the date of this order.

## STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In addition, the Court must dismiss any plaintiff's IFP complaint, or any portion of that complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

## BACKGROUND

Plaintiff alleges that the events that are the bases for her claims occurred in September 2021, in "INSTAGRAM via@mumy breath mornings." (ECF 1, at 4.) She also alleges the following:

> Coi Leray reached out to Peter Rosenberg from "Hot 97" to jump on [Plaintiff's] song "Bitch I'm Fed Up." [Plaintiff] didn't want to do the feature but Peter Rosenberg didn't want his work to go undone so [Plaintiff] agreed to allow her to

---

[2] Prisoners are not exempt from paying the full filing fee, even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

>feature. But the catch was for [Plaintiff] to pay them for this feature. They reached out to [Plaintiff] for, mind you, [Plaintiff] was paying Peter Rosenberg to play [Plaintiff's] music via Hot 97 $500 a month via Google. Until [Plaintiff] sent money to Coi Leray for this feature. Upon request of [Plaintiff's] budget[,] [Plaintiff] said [she] would only agree to $500-$1000 because [she] just invested several bands into a studio @kinglandjams under someone else['s] name so [she] could stay low key. They agreed [and Plaintiff] sent the money once [she] got paid a [week] later. Sent the music [and] waited for the track back instead she asked for more money because of status. Then [Plaintiff] reached out to her father about the shit [and] him [and Plaintiff] got into it because his daughter ran off with [Plaintiff's] money and didn't send back anything. Very unprofessional.

(*Id.* at 4-5.)

Plaintiff further alleges that she "was set up for an arrest[,] as well [as] extorted out of $1000[,] [and had her] life threatened by the grown man 'Benzino.'" (*Id.* at 5.) She states that she "almost lost [her] life [and] its all like he said 'Ima [sic] take your head off.'"[3] (*Id.*)

## DISCUSSION

**A.    Private prosecution**

Plaintiff's claims in which she seeks the criminal prosecution of any of the defendants must be dismissed. Plaintiff cannot initiate a prosecution in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against any defendant because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court. . . ."

---

[3] On February 6, 2023, after Plaintiff filed her complaint, the court received a letter from her in which she complains that: (1) she is not receiving certain mail at the RMSC; (2) she is being criminally prosecuted; (3) the judge presiding over her criminal trial is being unfair; (4) between February 1 and 3, 2022, while she was unconscious and being treated at the Bellevue Hospital Center, she was sexually assaulted by "officers"; and (5) she has been sexually harassed while she has been held in the RMSC. (ECF 5.) Because the contents of that letter are not associated with the allegations in Plaintiff's complaint, the Court will not regard the letter as a supplement to the complaint. If Plaintiff wishes to assert claims based on the allegations made in the letter, she may do so in a separate civil action.

*Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, because Plaintiff lacks standing to cause the criminal prosecution of others, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 618-19 (1973), the Court dismisses, for lack of subject matter jurisdiction, any claims in which Plaintiff seeks the criminal prosecution of any of the defendants, *see* Fed. R. Civ. P. 12(h)(3); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[ ] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [her] claim.") (internal quotation marks and citation omitted).

**B.      Plaintiff's remaining claims**

The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court's subject matter jurisdiction is available only when a "federal question" is presented or, if the plaintiff is asserting claims under state law under the court's diversity jurisdiction, when the plaintiff and the defendants are citizens of different States and the amount in controversy exceeds the sum or value of $75,000. "'[I]t is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'" *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative").

Plaintiff asserts that the defendants have violated her federal constitutional rights. The defendants do not, however, appear to be government officials or other state actors. In addition,

Plaintiff's dispute with the defendants appears to arise out of an allegedly breached agreement to play Plaintiff's song on a privately owned radio station and from a threat to Plaintiff's life. The Court therefore construes the complaint as asserting claims under state law under the Court's diversity jurisdiction, and not claims under federal law under the Court's federal question jurisdiction.

To establish the court's diversity jurisdiction, a plaintiff must first show that she and the defendants are citizens of different States. *See* 28 U.S.C. § 1332(a)(1); *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.,* only if there is no plaintiff and no defendant who are citizens of the same State."). For diversity purposes, an individual is a citizen of the State where he or she is domiciled, which is defined as the place where a person "has his [or her] true fixed home . . . and to which, whenever he [or she] is absent, he [or she] has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has but one domicile." *Id.* There is a rebuttable presumption that a prisoner retains her pre-incarceration domicile. *See Blumatte v. Quinn*, 521 F. Supp. 2d 308, 312 n.3 (S.D.N.Y. 2007); *Housand v. Heiman*, 594 F.2d 923, 925 n. 5 (2d Cir. 1979). In addition, for diversity purposes, a corporation is a citizen "of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." § 1332(c)(1); *see also The Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (a corporation's principal place of business is its "nerve center," usually its main headquarters).

The plaintiff must also allege to a "reasonable probability" that her claims are in excess of the sum or value of $75,000, the statutory jurisdictional amount. *See* § 1332(a); *Colavito v.*

*N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted).

To the extent that Plaintiff asserts claims under state law under the court's diversity jurisdiction, while she seems to allege that Defendants Scott and Collins are both citizens of New York State (ECF 1, at 3), she does not allege any facts indicating her own state citizenship or the state citizenship of any other defendant. Thus, the Court cannot determine whether the parties are diverse. In addition, while Plaintiff seeks $100 million in damages as well as ownership of the rights to the defendants' music catalogs, she does not allege facts sufficient to show that there is a reasonable probability that the value of her claims is in excess of the sum or value $75,000 – the jurisdictional amount for a diversity action – because her dispute appears to arise from the breach of an agreement in which she allegedly lost only $1,000.

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file an amended complaint in which she shows that she and the defendants are citizens of different States – if Plaintiff is a citizen of New York State, no defendant named in her amended complaint may also be a citizen of New York State – and that the value of her claims is in excess of the sum or value of $75,000.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. Federal district courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that federal district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d

99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to establish the court's diversity jurisdiction, the Court grants Plaintiff 30 days' leave to amend her complaint to allege facts showing that the Court can consider her claims under its diversity jurisdiction.

Plaintiff is granted leave to amend her complaint to provide more facts about her claims. In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who injured Plaintiff, how, when, and where she was injured; and why she is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

Plaintiff may consult the legal clinic opened in this judicial district to assist people who are parties in civil actions and do not have lawyers. The clinic is operated by a private

organization called the New York Legal Assistance Group ("NYLAG"); it is not part of, or operated by, the court (and, among other things, therefore, cannot accept filings on behalf of the court – such filings must still be filed by a *pro se* party with the court's Pro Se Intake Unit).

To receive limited-scope assistance from the clinic, Plaintiff may mail a signed retainer and intake form to the NYLAG Pro Se Clinic, at 40 Foley Square, LL22, New York, New York 10007. Once the paperwork is received, the clinic will coordinate contact with the litigant. Once received, it may take up to two weeks for the clinic to contact the litigant. Copies of the clinic's flyer, retainer, and intake form are attached to this order.

## CONCLUSION

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this court's Pro Se Intake Unit within 30 days of the date of this order, caption the document as an "amended complaint," and label the document with docket number 1:23-CV-0231 (LTS). An amended complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and she cannot show good cause to excuse such failure, the Court will dismiss this action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Court refers Plaintiff to the NYLAG Pro Se Clinic. Copies of the clinic's flyer, retainer, and intake form are attached to this order.

SO ORDERED.

Dated:   March 13, 2023
         New York, New York

                                            /s/ Laura Taylor Swain
                                            LAURA TAYLOR SWAIN
                                            Chief United States District Judge